# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JENS RANDALL DAVIS,<br><br>　　　　　　Defendant. | Case No. 1:18-cr-0052-EJL<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR MISTRIAL** |

Pending before the Court in the above-entitled matter is the Defendant's, Jens Randall Davis, Motion for Mistrial made during the jury trial in this matter. On May 9, 2019, the Court held a hearing on the Motion and, after considering the parties' arguments and entire record, orally denied the Motion. This Order memorializes the Court's ruling in writing.

## BACKGROUND

On the first day of trial, defense counsel asked Deputy Shawn Weigelt of the Canyon County Sheriff's office on cross-examine if he recalled recording his contact with the

ORDER-1

Defendant on January 10, 2018 on his body camera and whether he uploaded the recording to his department's server. The witness said he did. Defense counsel then asked if the officer had signed the arrest report. The witness said he had. The arrest report includes a reference to attached discharge paperwork. The defense counsel asked the witness asked what the attached document was and where it was located. The witness replied that the attached document was the Defendant's intake file but the Government objected as to relevance as to where the document was located.

Defense counsel asked the Court for an opportunity to be heard, after which the Court excused the jury. Defendant's counsel then moved for a mistrial, based on the fact that the body camera recording had not been produced in discovery and the intake file had not been attached to the produced arrest report. The Government made argument in response, stating that it was not aware the body camera recording existed and promised to provide it to defense counsel. At that time, the Court orally denied the motion for mistrial.

On the morning of the second day of trial, the Government produced to the Defendant the witness' body camera recordings—three audio files and one video file—and the hospital discharge paperwork attached to the arrest report.[1] The three audio recordings contained statements made by the Defendant at the hospital while under police custody. The video recording showed the officer searching the Defendant's wallet. The hospital

---

[1] The Defendant possessed and knew of the hospital discharge paperwork itself prior to trial but was not made aware that the discharge paperwork had been attached to Officer Weigelt's arrest report.

discharge paperwork provided general emergency department discharge instructions and noted the Defendant was evaluated for potential mental health issues.

The Court excused the jury for the day in order to (1) provide the Defendant time to review the body camera recordings and the complete arrest report and (2) determine if he wanted to raise any legal arguments concerning the newly discovered material. After review of the newly discovered material, defense counsel again moved for a mistrial and made argument in support, and the Government made argument in response.

After hearing the arguments of counsel, the Court orally denied the Defendant's motion for a mistrial. It instead granted the Defendant a continuance of five days to allow the Defendant time to consider the newly disclosed evidence and prepare its case, although the parties later stipulated to the jury trial proceeding as originally scheduled. The Court further advised it would allow the Defendant to recall witnesses and conduct additional cross-examination of witnesses based on the newly discovered evidence and directed the Government to ensure all discovery material was produced to the Defendant. It found no bad faith by the Government in its failure to disclose the material.

## DISCUSSION

In a criminal case, a court may declare a mistrial when there is "manifest necessity." In determining whether there is manifest necessity, a trial court must (1) hear the opinions of the parties about the propriety of the mistrial, (2) consider the alternatives to a mistrial and choose the alternative least harmful to a defendant's rights, and/or (3) act deliberately instead of abruptly. *United States v. Chapman*, 524 F.3d 1073, 1082 (9th Cir. 2008). The court considers various matters, which can include the particular details of the information

ORDER-3

that was not disclosed, whether the failure to disclose was intended or inadvertent, the subject matter of the case, the time frame of the trial in which the disclosure occurred, the timely objection by the defendant, and related matters that are all within the immediate knowledge of the trial judge. Ultimately, its decision must be based on evidence presented in the record. *Id*. "[T]he district court [is] not required to make an explicit finding of manifest necessity or to articulate on the record all the factors which informed its discretion." *Id.* at 1081 (quoting *United States v. Smith,* 621 F.2d 350, 351 (9th Cir. 1980)) (alterations in original).

Here, the Defendant moves for a mistrial based on the late disclosure of potential *Brady* evidence. *See generally Brady v. Maryland,* 373 U.S. 83 (1963). The Government contends there was (1) no discovery violation under Rule 16 of the Federal Rules of Criminal Procedure in failing to disclose the body camera recordings and the complete arrest report and (2) no violation of the Defendant's rights under *Brady*. The Court first turns to whether the Government violated Rule 16 before it considers whether the Defendant's due process rights were violated.

1. **Federal Rule of Criminal Procedure 16**

The Defendant argues the Government had possession of the body camera recordings and the complete arrest report and, therefore, had an obligation to disclose them. The Government denied it possessed the material prior to the second day of trial because the recordings and the complete arrest report were held by a state law enforcement agency.

Federal Rule of Criminal Procedure 16 grants criminal defendants a broad right to discovery. The government must disclose, upon a defendant's request, all "data . . . within

the government's possession, custody, or control . . . material to preparing the defense[.]" Fed. R. Crim. P. 16(a)(1)(E)(i). Information is in the government's possession if the prosecutor "has knowledge of and access to the documents sought by the defendant." *United States v. Santiago,* 46 F.3d 885, 893 (9th Cir. 1995). "For the purposes of Rule 16(a)(1)(E), [the Ninth Circuit] has held, '[t]he prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any *federal agency* participating in the same investigation of the defendant.'" *United States v. Fort*, 478 F.3d 1099, 1100 (9th Cir. 2007) (citing *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989)); *see United States v. Gatto*, 763 F.2d 1040, 1049 (9th Cir. 1985) (holding the government's failure to disclose the documents earlier did not violate Rule 16 because the state-held documents were not in the government's actual possession). Evidence becomes "discoverable only when the state authorities place[] it in the hands of the federal authorities, because 'the triggering requirement under rule 16[(a)(1)(E)] is that the papers, documents, and tangible objects be in the actual possession, custody or control of the [federal] government.'" *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007) (quoting *Gatto*, 763 F.2d at 1049).

The witness from the county sheriff's department provided the body camera recordings and the completed arrest report to the Government on the morning of the second day of trial. Prior to this time, the Government had made repeated attempts to secure all of the material in the state's possession but did not know that the body camera recordings existed or that the produced arrest report was incomplete. Upon receiving the newly discovered material, the Government immediately disclosed them to the Defendant. The

Court finds no willful violation by the Government in its failure to turn over the state body camera recordings or the complete state arrest report prior to the trial. Furthermore, as the material only became discoverable when the state authority placed it in the hands of the federal authorities, the Court finds that there was no Rule 16 violation.

## 2. *Brady* Violation

The Court next turns to determining whether the Defendant's constitutional rights were violated. In *Brady*, the Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Accordingly, a *Brady* violation has three elements: "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Kohring*, 637 F.3d 895, 901 (9th Cir. 2011). "Evidence is prejudicial . . . 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 902 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375 (1985)). In turn, "[t]here is a 'reasonable probability' of prejudice when suppression of evidence 'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555 (1995)).

Not every late disclosure gives rise to a *Brady* violation. *See, e.g.*, *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993) (rejecting *Brady* claim where potentially exculpatory material was disclosed shortly before and even during trial). "*Brady* does not

necessarily require that the prosecution turn over exculpatory material *before* trial." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (citation omitted). "Rather, the relevant inquiry is whether the disclosure, when made, was still of value to the accused." *United States v. Purry*, 702 F. App'x 511, 514 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1313 (2018); *see United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir. 1995) (finding no *Brady* violation where late-disclosed information was still used during cross-examination, and thus, "[t]he government disclosed the information at a time when it was of value to [the defendant]"); *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (finding no *Brady* violation where the defense received the documents during the trial with enough time to make use of them, including the opportunity to recall witnesses).

The Defendant's *Brady* claim turns on the Government's failure to timely disclose the body camera recordings and the complete arrest report with the attached hospital discharge paperwork. The Defendant argues this evidence would have been exculpatory for both his pre-trial proceedings and preparation as well as during the trial. As discussed above, the federal prosecutor was diligent in his efforts to timely obtain all discovery material from state agencies and had no knowledge the newly discovered evidence existed until trial. However, the Court understands the importance of preserving the Defendant's due process rights and so turns to whether the late disclosure of the newly discovered materials was prejudicial to the Defendant.

    a. *Trial Proceedings*

The Court finds the late disclosure of evidence did not prejudice the Defendant's ability to present his case at trial. Even if the disclosure of the evidence was late, the

Defendant was still able to use the evidence at trial. The Court excused the jury for the entire second day of the trial to allow the defense time to review the newly produced material and prepare for its case for trial. The Court also ordered the trial be continued for five days, but the parties later agreed to proceed without any further delay. The Defendant was allowed to recall and cross-examine all of the Government's witnesses based on the newly discovered evidence and to call his own witnesses in his case.

### b. Pre-Trial Proceedings

Defense counsel argues the recess does not remedy *Brady* violations related to competency, the insanity defense, the suppression issues that she would have raised prior to trial. She also argues she would have been able to offer a stronger proffer of the duress defense, which this Court precluded her from presenting to the jury, had she had access to the information earlier.

#### i. Competency

Defense counsel argues the newly discovered body camera audio recordings[2] would have affected the competency hearing outcome, where the Court found the Defendant competent to stand trial.

---

[2] Defense counsel initially contended that the Government's competency expert witness, Dr. Low, did not have access to West Valley Medical Center records, including the hospital discharge paperwork, while drafting her report and during the competency hearing. Defense counsel stated that Dr. Low only had access to the records after the Defendant emailed her the records on January 28, 2019. However, both parties' competency expert witnesses reviewed the West Valley Medical Center records while drafting their reports. (*See* Dkts. 31, p. 5; 48, p. 3.) Defense counsel later acknowledged that Dr. Low *did* have the medical records but lacked the audio recordings of the events at West Valley Medical Center on January 10, 2018.

Both competency expert witnesses had access to, and relied upon, written reports of the Defendant's statements at the hospital in making their determinations as to the Defendant's mental state. (*See* Dkts. 31, p. 5; 48, p. 3.) Those written reports are consistent with the audio recording of the Defendant's statements. For example, the Government's competency expert witness, Dr. Cynthia Low, noted in her June 28, 2018 forensic evaluation that on the day of the incident, the Defendant tested positive for amphetamines, methamphetamines, and opiates, "was paranoid, made threats, . . . believed a woman was trying to clone him by extracting his DNA and semen[,] . . . was agitated, spoke rapidly, and felt like he was having a prophecy in code[.]" (Dkt. 31, p. 6.) She also observed that the Defendant had told a nurse at the hospital that the Mexican Mafia was after him because of a book he wrote and he needed a gun for protection. (*Id*. at 3.) These previously recorded statements align with the Defendant's statements on the newly discovered audio recordings. Therefore, the Court finds the Defendant was not prejudiced by the late disclosure of the newly discovered evidence. The competency experts had the Defendant's statements at the hospital when they rendered their opinions. There is not a reasonable probability that, had the audio recordings been disclosed to the defense prior to the competency hearing, that the experts' opinions or the Court's ruling on competency, (Dkt. 58), would have been different.

      ii. <u>Insanity Defense</u>

Defense counsel also argues that the newly discovered audio recordings would have bolstered her ability to establish an insanity defense. A competent defendant has the Sixth Amendment right to chose whether to present an insanity defense. *United States v. Read*,

918 F.3d 712, 721 (9th Cir. 2019). The Defendant has maintained he does not wish to present a mental state defense. (Dkts. 38, 69.) There is no reasonable probability that, had the evidence been disclosed to the defense prior to trial, the Defendant would have allowed the defense counsel to present an insanity defense. The Defendant was not prejudiced by the late disclosure of evidence because the defense counsel's ability to mount an insanity defense is irrelevant if the Defendant refuses to present such a defense. Given that the Defendant rejected mental state defenses, the Court stands by its written Order, (Dkt. 94), precluding the defense from admitting into evidence contextual statements regarding the Defendant's mental state of mind.

### iii. Suppression Issues

Defense counsel argues that she would have made motions to suppress the newly produced audio of the Defendant's statements after he was in custody had the newly discovered body camera recordings been produced prior to trial. She contends the audio should be suppressed because she did not hear her client being *Mirandized* on the newly discovered recordings. Had she heard the audio, she could have taken preemptive action to determine if someone had, in fact, *Mirandized* her client. However, as defense counsel acknowledges, she already knew the Defendant had made a statement at the hospital after he was in custody. She had time before trial to determine if her client had been *Mirandized* prior to being taken to the hospital and to file a motion to suppress statements that the Defendant made while at the hospital. However, even if all of the Defendant's statements at the hospital were suppressed, the Court does not find there is a reasonable probability,

based on the other evidence that the Government presented to the jury, that the trial's outcome would be different.

Defense counsel also argues that she may have moved to suppress evidence of the wallet's contents given the way the body camera video depicted the officer's search of the wallet. It is unclear to the Court on what grounds she could have moved to suppress the evidence. However, even if the contents of the wallet were suppressed, that ruling would have, at most, prevented the Government from entering a photograph of the Defendant's driver's license into evidence. As multiple eyewitnesses testified as to the Defendant's identity and presence at the scene of the offense, there is no reasonable probability that a successful motion to suppress the wallet would have affected the outcome of the trial.

    iv. <u>Duress Defense</u>

Defense counsel also argues that the audio recording would have improved her ability to raise a duress defense, which the Court had precluded her from arguing, (Dkt. 94). In the audio recording, the Defendant claimed that an individual named "Magnus" was after him (in addition to also claiming his family, the Mexican mafia, and other unidentified people were after him). The Defendant informed defense counsel that Magnus is a real person currently in law enforcement custody. Defense counsel states she was previously unaware of Magnus because her client has been uncooperative. She argues that if she had access to the recording earlier, she would have investigated "Magnus" to determine if she could have submitted a more substantiated proffer of duress to the Court.

To make a prima facie showing of duress in a pretrial offer of proof, or in evidence presented at trial, a defendant must establish: "(1) an immediate threat of death or serious

bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm." *United States v. Vasquez–Landaver,* 527 F.3d 798, 802 (9th Cir. 2008) (internal quotations omitted). The factors are considered using an objective reasonable-person standard.[3] *United States v. Lopez*, 913 F.3d 807, 815 (9th Cir. 2019). In order for a threat to be immediate, "a threat must be specific: 'A veiled threat of future unspecified harm will not satisfy this requirement.'" *United States v. Chi Tong Kuok*, 671 F.3d 931, 948 (9th Cir. 2012) (internal quotations omitted). In determining whether a fear is well-grounded, "the jury may take into account *the objective situation* in which the defendant was allegedly subjected to duress." *United States v. Lopez*, 913 F.3d 807, 815–816 (9th Cir. 2019) (internal quotations omitted). A defendant takes "the opportunity to escape the threatened harm where the defendant cooperate[s] with authorities at the first opportunity to do so without alerting an observer and submit[s] to authorities at the first reasonable opportunity by consenting to a search." *United States v. Ibarra-Pino*, 657 F.3d 1000, 1006 (9th Cir. 2011) (internal quotations omitted) (alterations in original); *see United States v. Contento–Pachon,* 723 F.2d 691, 695 (9th Cir. 1984) ("Once a defendant has reached a position where he can safely turn himself in to the authorities he will likewise have a reasonable opportunity to escape the threatened harm."). On the other hand, "a defendant who attempts to flee and physically resists capture

---

[3] Similarly, to invoke the defenses of necessity, justification, or self-defense in a case of an otherwise unlawful possession of a weapon, the defendant must proffer evidence that that the defendant had no legal alterative. *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir. 1991), *as amended* (Aug. 4, 1992); *United States v. Lemon,* 824 F.2d 763, 765 (9th Cir. 1987). Whether a legal alternative exists is evaluated through an objective framework*. United States v. Perdomo-Espana*, 522 F.3d 983, 987 (9th Cir. 2008).

rather than consenting to a search fails to avail himself of the opportunity to escape the threatened harm and cannot present a duress defense." *Id*.

Even assuming the Defendant was able to obtain more information about Magnus and establish the first two prongs of the duress defense, he cannot satisfy the third prong. The Defendant went to work that morning and, while at work, had the opportunity to contact the authorities for help. He did not do so. When law enforcement arrived on the scene and asked him to put his hands up and cooperate, the Defendant resisted. The standoff between the Defendant and the law enforcement lasted for several hours. While the Defendant was surprised by the number of law enforcement officers at the scene and their forceful commands for him to drop his firearm, fear of legal authorities does not remove the Defendant's obligation to satisfy the third-prong in order to present a duress defense. There is no reasonable probability that the newly discovered evidence would have altered the Court's decision to preclude the duress defense. Thus, consistent with its prior written order, (Dkt. 94), the Defendant was precluded from presenting the duress and other related defenses to the jury.

3. **New Evidence to Be Entered into Court Records**

At the hearing on the motion for mistrial, the Defendant requested the following evidence be entered into the records: (1) the arrest report with the attached hospital discharge paperwork; (2) the three body camera audio recordings; and (3) the body camera video recording; (4) emails regarding defense counsel's persistence to obtain discovery evidence from the Government; and (5) the subpoena to Dr. Low for the materials she reviewed in making her report. The Court grants the Defendant's request. During oral

arguments, the Government also cited to emails memorializing its persistence in obtaining discovery evidence from state agencies. The Government may also enter those emails into the record for the purpose of responding to the motion for mistrial.

## CONCLUSION

The Defendant has not shown manifest necessity requiring the Court order a mistrial. The Government did not violate Federal Rule of Criminal Procedure 16. To the extent that the newly discovered evidence raises *Brady* concerns, the Defendant has not been prejudiced. The Motion for Mistrial is denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1. Defendant's Oral Motion for a Mistrial is **DENIED**.

2. Defendant's Documents in Support of Mistrial Motion Heard on May 9, 2019 is admitted as part of the record for the purpose of the Motion for Mistrial.

3. Defendant shall file Defendant's Documents in Support of Mistrial Motion Heard on May 9, 2019 by Friday, May 17, 2019.

4. If it so chooses, the Government shall file the emails it referred to into the record as Government's Documents in Response to Mistrial Motion Heard on May 9, 2019 by Friday, May 17, 2019. Government's Documents in Response to Mistrial Motion Heard on May 9, 2019 will be admitted as part of the record for the purpose of responding to the Motion for Mistrial.

DATED: May 16, 2019

_____
Honorable Edward J. Lodge
U.S. District Judge